UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
CASSI M. MOORE,

                    Plaintiff,
                                         <u>MEMORANDUM & ORDER</u>
          -against-                      19-CV-1850(JS)

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
-----------------------------------X
APPEARANCES
For Plaintiff:       Charles E. Binder, Esq.
                     Law Office Charles E. Binder and
                     Harry J. Binder
                     485 Madison Avenue, Suite 501
                     New York, New York 10022

For Defendant:       Matthew J. Modafferi, Esq.
                     United States Attorney's Office
                     Eastern District of New York
                     271a Cadman Plaza East
                     Brooklyn, New York 11201

SEYBERT, District Judge:

          Plaintiff Cassi M. Moore ("Plaintiff" or "Moore") brings
this action pursuant to Section 205(g) of the Social Security Act
(42 U.S.C. § 405(g)), challenging the Commissioner of Social
Security's denial of her application for supplemental security
income benefits ("SSI").  Before the Court are Plaintiff's motion
for judgment on the pleadings (Pl. Mot., D.E. 9; Pl. Br., D.E. 10;
Pl. Reply, D.E. 14), and the Commissioner's cross-motion for
judgment on the pleadings (Comm'r Mot., D.E. 11; Comm'r Br., D.E.
12).  For the following reasons, Plaintiff's motion is DENIED and
the Commissioner's cross-motion is GRANTED.

BACKGROUND[1]

Plaintiff applied for SSI[2] on November 12, 2015, alleging disability beginning on July 10, 2015.  (R. 13.)  She claimed issues with anxiety, post-traumatic stress disorder ("PTSD"), depression, and bipolar disorder. (R. 211.)  After her application was initially denied on May 3, 2016, Plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on May 14, 2018.  (R. 13; 30-57.)  Plaintiff, who was represented by counsel and a non-attorney representative, testified at the hearing; a vocational expert also testified.  (R. 13.)  On May 29, 2018, the ALJ issued her decision finding that Plaintiff was not disabled.  (R. 24.)  This became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review.  (R. 1-6.)  This action followed.  (Compl., D.E. 1.)

DISCUSSION

I.   Standard of Review

In reviewing the ruling of an ALJ, the Court does not determine de novo whether a plaintiff is entitled to disability benefits.  Thus, even if the Court may have reached a different

---

[1] The background is derived from the administrative record filed by the Commissioner.  (R., D.E. 8.)  For purposes of this Memorandum & Order, familiarity with the administrative record is presumed.  The Court's discussion of the evidence is limited to the challenges and responses raised in the parties' briefs.

[2] Income is a factor considered for SSI eligibility.  A claimant must be disabled to receive SSI.  20 C.F.R. § 416.202.

decision, it must not substitute its own judgment for that of the ALJ.  See Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991).  If the Court finds that substantial evidence exists to support the Commissioner's decision, the decision will be upheld, even if evidence to the contrary exists.  See Johnson v. Barnhart, 269 F. Supp. 2d 82, 84 (E.D.N.Y. 2003).

II.  The ALJ's Decision

Here, the ALJ applied the familiar five-step process (see 20 C.F.R. §§ 404.1520, 416.920) and concluded that Plaintiff was not disabled.  (R. 24.)  She found that (1) except for a continuous twelve-month span during the relevant period where she did not work, Plaintiff had engaged in substantial gainful activity (R. 15-16); (2) Plaintiff had severe impairments of anxiety disorder and affective disorder (R. 16); (3) the impairments did not meet or equal the severity of any of the impairments listed in the Social Security Act (R. 16-18); (4) Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with several non-exertional limitations (R. 18-22); and (5) although Plaintiff had no past relevant work, there were jobs that existed during the relevant period that Plaintiff could perform (R. 22-23).

III. Analysis

Plaintiff contends that the ALJ failed to properly (1) weigh medical opinion evidence and accordingly determine

Plaintiff's RFC and (2) evaluate Plaintiff's testimony and credibility. (Pl. Br. at 8, 14.)  The Commissioner responds that the ALJ properly (1) weighed the opinion evidence to determine Plaintiff's RFC and (2) evaluated Plaintiff's testimony. (Comm'r Br. at 12-1p.)

   A.   The ALJ's Weighing of Medical Opinion Evidence and Resulting RFC

   1. Opinion Evidence

        The "treating physician rule" provides that the medical opinions and reports of a claimant's treating physicians are to be given "special evidentiary weight." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).  The regulations state:

>        Generally, we give more weight to opinions from your treating sources . . . .  If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2) (emphasis supplied) (alterations in original).[3]  Nevertheless, the opinion of a treating physician

---

[3] "While the Act was amended effective March 27, 2017 [to eliminate the treating physician rule], the Court reviews the ALJ's decision under the earlier regulations because the Plaintiff's application was filed before the new regulations went into effect." Williams v. Colvin, No. 16-CV-2293, 2017 WL 3701480, at *1 (E.D.N.Y. Aug. 25, 2017); see also 20 C.F.R. § 404.1527 ("For claims filed (see § 404.614) before March 27, 2017, the rules in this section apply.  For claims filed on or after March 27, 2017, the rules in § 404.1520c apply.").

"need not be given controlling weight where [it is] contradicted by other substantial evidence in the record." Molina v. Colvin, No. 13-CV-4701, 2014 WL 3925303, at *2 (S.D.N.Y. Aug. 7, 2014) (internal quotation marks and citations omitted).

When an ALJ does not afford controlling weight to the opinion of a treating physician, the ALJ must consider several factors: "(1) the length of the treatment relationship and frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the extent to which the opinion is supported by medical and laboratory findings; (4) the physician's consistency with the record as a whole; and (5) whether the physician is a specialist." Schnetzler v. Astrue, 533 F. Supp. 2d 272, 286 (E.D.N.Y. 2008). The ALJ must also set forth "'good reasons' for not crediting the opinion of a plaintiff's treating physician." Id. (citations omitted).

## i. Treating Psychiatrist Dr. Arango

As relevant here, the ALJ considered the medical opinion of Plaintiff's treating psychiatrist Dr. Arango. (R. 20, 22.) Plaintiff first saw Dr. Arango on November 21, 2015. (R. 349.) She saw him numerous times from November 2015 through July 2016. (R. 406-46.) However, he did not treat her for almost two years from July 2016 until her next appointment in March 2018. (R. 447-48.) Dr. Arango provided two opinions: a June 2016 medical source statement (R. 394-96) and an April 2018 mental impairment

questionnaire (R. 400-04).

In the June 2016 statement, Dr. Arango opined that Plaintiff had (1) extreme limitations[4] in her ability to relate to others; (2) marked limitations in her ability to maintain concentration, pace, and attention for extended periods of at least two hours; (3) moderate limitations in her ability to engage in daily activities and socialize; maintain her personal habits; and perform activities with a schedule, maintain regular attendance, and be punctual; and (4) no or mild limitations in her ability to sustain a routine without special supervision. (R. 394.) He further stated that Plaintiff experienced (1) marked limitations in responding appropriate to co-workers; (2) moderate limitations in understanding, carrying out and remembering instructions; responding appropriately to supervision; responding to customary work pressures; responding appropriately to changes in a work setting; using good judgment while working; and behaving in an emotionally stable manner; and (3) no or mild limitations in

---

[4] The medical source statement indicates the following: (1) an "extreme" limitation results in a complete loss of ability in an activity with no ability to sustain performance during an eight-hour workday; (2) a "marked" limitation results in a substantial loss of ability with ability to sustain performance for up to 1/3 of a workday; (3) a "moderate" limitation results in some loss of ability with the ability to sustain performance for 1/3 up to 2/3 of a workday; and (4) "no" or "mild" limitation results in no significant loss ability in an activity with ability to sustain performance for 2/3 or more of a workday. (R. 394.)

performing simple, complex, repetitive or varied tasks.  (R. 395.)
Dr. Arango posited that Plaintiff was likely to be absent from
work three to four days per month.  He also opined that her mental
conditions were likely to deteriorate if she was placed under job-
related stress.  (R. 394-95.)

Approximately two years later, in the April 2018
statement, Dr. Arango diagnosed Plaintiff with generalized anxiety
disorder, bipolar disorder, and PTSD.  (R. 400.)  He opined that
she had (1) marked limitations in working in coordination with
others; being aware of hazards and taking appropriate precautions;
and traveling to unfamiliar places and using public transportation;
(2) moderate to marked limitations in maintaining concentration
and attention for extended periods; completing a workday without
interruptions from psychological symptoms; and responding
appropriately to workplace changes; (3) moderate limitations in
understanding detailed instructions; carrying out simple and
detailed instructions; performing activities on schedule and being
punctual; performing at a consistent pace without unreasonably
long or frequent rest periods; interacting appropriately with the
public; asking simple questions or requesting assistance;
accepting instructions and responding to criticism from
supervisors; setting realistic goals; and making independent
plans; and (4) no or mild limitations in other mental categories.

7

(R. 403.)  He estimated that Plaintiff would miss work two to three times per month due to her disability.  (R. 404.)

The ALJ gave little weight to Dr. Arango's opinions that Plaintiff had severe mental limitations because they were "unsupported by [Plaintiff's] repeatedly normal mental status examinations and effectiveness of medications" and because her "mental status examinations have been generally normal and there has been an effective use of medications."  (R. 22.)  Earlier in her opinion, the ALJ recounted Dr. Arango's treatment notes from 2015 to 2018 in detail, that reflected, among other things: that Plaintiff "had euthymic mood, intact functional status, appropriate affect, and . . . was oriented and alert [and her] mood was described as stable"; had "generally normal mental status examinations with normal flow of thought and appropriate interview behavior"; "had intact memory and good attention and concentration;" responded well to medication and "was assessed as 'much improved'"; had gotten a service dog and was happy with it; "maintained her progress"; and when she had "increased anxiety symptoms . . . utilized conservative management including caring for her plants."  (R. 20.)

The Court finds that the ALJ did not err in according less weight to Dr. Arango's opinions, because the ALJ explained that they were not supported by his own treatment notes reflecting mostly normal examinations and effective management of symptoms

with medication.  The Court recognizes that Dr. Arango diagnosed Plaintiff with anxiety and depression-related mental issues, but his notes reflect that she was able to function despite these issues.  Thus, Dr. Arango's two opinions stating that Plaintiff had severe, significant limitations are not in harmony with years of contemporaneous notations.  See Monroe v. Comm'r of Soc. Sec., 676 F. App'x 5, 8 (2d Cir. 2017) ("the ALJ [properly] rejected [the treating physician's] opinion because she found it was contrary to his own treatment notes" and "[w]hile [the] medical source statement is supported by some evidence, the ALJ's decision to disregard [the] opinion is nevertheless substantially supported by the record.").  Notably, in Monroe, the ALJ did not afford controlling weight to the claimant's psychiatrist even where he treated the claimant with counseling and medication for anxiety and depression for over fifteen years.  Monroe v. Comm'r of Soc. Sec., No. 14-CV-1035, 2015 WL 13744412, at *2-3 (N.D.N.Y. Nov. 3, 2015), R&R adopted, 2016 WL 552364, aff'd 676 F. App'x 5.

Here, Dr. Arango's "internal treatment notes are largely inconsistent with [his] opinion--[his] examinations consistently revealed normal and stable findings." Bourne v. Comm'r of Soc. Sec., No. 17-CV-2706, 2019 WL 3852309, at *4 (E.D.N.Y. Aug. 12, 2019) (noting that "despite [the claimant's] complaints, her mental status examinations remained unremarkable" and the treating physician's opinion that the claimant was "incapable" of completing

9

many work related tasks and "would experience significant difficulty completing a normal workday" was not supported by the record); see also Pezza v. Comm'r of Soc. Sec., No. 19-CV-3254, 2020 WL 3503170, at *2 (E.D.N.Y. June 29, 2020) ("the ALJ properly afforded [the treating physician's] highly restrictive opinion little weight because it was inconsistent with his own contemporaneous treatment notes, which were fairly benign.").

Plaintiff responds that "medical charts are not kept in anticipation of litigation, but for the purposes of recording a patient's symptoms, diagnoses, and treatment recommendations, as was the case here." (Pl. Reply at 1.) This argument requires little consideration. The Court would be hard pressed to believe that a medical professional's treatment notes would somehow be different--or reflect more serious diagnoses--if the medical professional knew they would one day be used for litigation of a patient's disability claim. The Court assumes, as did the ALJ here, that Dr. Arango's treatment notes were accurate.

Plaintiff's next argument that the ALJ improperly relied upon her response to medication also misses the mark. There is no reason for Court, or the ALJ, to discount Plaintiff's improvement and effective management of her symptoms. Plaintiff contends that "[o]bviously treatment with therapy and psychotropic medications provided some response or treatment would not have been continued." (Pl. Br. at 10.) However, Dr. Arango's notes do not reflect "some

10

response"--they repeatedly reference her condition as "much improved."

The ALJ additionally noted that in evaluating the medical opinions, including Dr. Arango's, she considered whether they were "supported by sufficient documentation of evidence, clear articulation for the basis of the opinions, and consistent finding with other objective medical evidence of record." (R. 21.) "An application of the treating physician rule is sufficient when the ALJ provides 'good reasons' for discounting a treating physician's opinion that reflect in substance the factors as set forth in [Section] 404.1527(d)(2), even though the ALJ declines to examine the factors with explicit reference to the regulation." Crowell v. Comm'r of Soc. Sec., 705 F. App'x 34, 35 (2d Cir. 2017) ("While the ALJ did not explicitly discuss the treating physician rule, he nonetheless stated that [the physician's] opinion . . . was contradictory to the rest of the record evidence.").

## ii. SSA Consultative Psychologist Dr. Herman

Dr. Herman evaluated Plaintiff at the Commissioner's request on February 24, 2016. (R. 353-56.) Plaintiff drove herself 25 miles to the evaluation. Dr. Herman noted that Plaintiff had received outpatient treatment but never been hospitalized for psychiatric reasons. (R. 353.) She had also been in a rehabilitation program and two outpatient programs for

substance abuse in the past.[5]   (R. 354.)   Dr. Herman observed Plaintiff to be "cooperative with adequate social skills . . . adequately groomed . . . [with] no abnormalities in . . . eye contact . . . speech . . . within normal limits . . . thought processes [were] coherent and goal oriented." Her "affect" was "appropriate in speech and thought content" and her "mood" was "mildly tense." Her "attention and concentration" and "recent and remote memory skills" were "intact" and her "cognitive functioning [was] average." Her "insight [was] fair [and her] judgment [was] fair, but may range to poor." (R. 354-55.)

Dr. Herman opined that Plaintiff had "moderate to marked limitation with respect to her ability to appropriately deal with stress and maintain a regular schedule." (R. 355.) She had "mild to moderate limitations following and understanding simple directions and instructions [and] performing simple tasks." (R. 355.) She had "mild limitations maintaining attention and concentration, learning new simple tasks, making appropriate simple work-related decisions, and relating adequately with others." (R. 355.) According to Dr. Herman, these limitations "may significantly interfere with [Plaintiff's] ability to function on a daily basis." (R. 355.)

The ALJ gave "less weight" to Dr. Herman's opinion

---

[5] There is no evidence that Plaintiff was abusing substances during the relevant period. (R. 16.)

because "he did not describe [Plaintiff's] mental limitations in vocationally relevant terms[.]"  (R. 21.)

    2. <u>The RFC Determination</u>

Upon considering the record evidence, the ALJ found that Plaintiff "has the [RFC] to perform a full range of work at all exertional levels, but with the following nonexertional limitations: simple routine tasks; no work around the general public; occasional interaction with others and no collaborative or teamwork."  (R. 18.)  Generally, the ALJ concluded that "[t]he objective medical evidence does not support disability.  Clinical treatment notes show generally normal findings and the effective use of medications."  (R. 20.)  She further found that Plaintiff "has not generally received the type of medical treatment one would expect given the alleged symptoms and functional limitations, but rather her treatment has been essentially routine and conservative in nature."  (R. 20.)

The ALJ's RFC determination was supported by the record evidence, namely, years of mental status treatment notes.  <u>See</u> <u>Pezza</u>, 2020 WL 3503170, at *4 (E.D.N.Y. June 29, 2020) ("In making an RFC determination, even though the ALJ ultimately gave little weight to Dr. Tirado's opinion, she was permitted to rely on the medical findings and treatment notes of Dr. Tirado and PA Kouroupos.  The voluminous medical records created by Dr. Tirado and his physician's assistant from June 2015 to October 2017

provided sufficient evidence from which the ALJ could assess plaintiff's RFC."). In addition to the treatment history, the RFC also incorporated Plaintiff's own account of her daily activities (R. 19) and Plaintiff's past work history[6] (R. 21). See Gates v. Astrue, 338 F. App'x 46, 48 (2d Cir. 2009) (The ALJ's determination that the claimant, who alleged disability due to cognitive impairments, was able to perform work at all exertional levels with nonexertional limitations, was supported by mental health progress notes, assessments stating that the claimant could perform simple tasks, and the claimant's past job experience and the ALJ's reasoning was "clearly discernible.").

In sum, the ALJ did not err in weighing the opinion evidence, and the RFC was supported by articulated substantial evidence.

B.    The ALJ's Evaluation of Plaintiff's Testimony

Plaintiff next argues that "the ALJ's evaluation of [her] subjective statements is not supported by substantial evidence." (Pl. Br. at 15.) Here, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements regarding the intensity, persistence and limiting effects of these symptoms

---

[6] In the past, Plaintiff had worked at an animal day care facility, a veterinary hospital, Toys R Us, and a pet hotel. (R. 48-49; 271.)

are not entirely consistent with the medical evidence and other

evidence in the record." (R. 19.)  Generally,

> When assessing a claimant's functioning, the
> ALJ must assess the claimant's subjective
> complaints along with the medical and other
> evidence.  In particular, the ALJ must assess
> whether the claimant's statements about the
> intensity, persistence and limiting effects of
> her symptoms are consistent with the objective
> medical evidence, although the ALJ cannot
> disregard the claimant's statement based
> solely on the fact that the objective medical
> evidence does not substantiate the alleged
> degree of limitation. Id. Rather, the ALJ
> should also consider the statements of medical
> sources, non-medical sources, and the
> enumerated relevant factors (i.e., daily
> activities, the nature of the symptoms,
> factors that precipitate or aggravate the
> symptoms, medications, the treatment
> received, and any other measures used to
> alleviate the symptoms).

Virginia L.S. v. Comm'r of Soc. Sec., No. 18-CV-0937, 2020 WL

529688, at *6 (N.D.N.Y. Feb. 3, 2020) (internal citations omitted).

"'The ALJ has discretion to evaluate the credibility of

a claimant and to arrive at an independent judgment, in light of

medical findings and other evidence.'"  Mollo v. Barnhart, 305 F.

Supp. 2d 252, 263-64 (E.D.N.Y. 2004) (quoting Marcus v. Califano,

615 F.2d 23, 27 (2d Cir. 1979)); Fiumano v. Colvin, No. 13-CV-

2848, 2013 WL 5937002, at *9 (E.D.N.Y. Nov. 4, 2013) ("An ALJ is

not required to accept a claimant's testimony regarding the

severity and persistence of [her] symptoms as true, but rather can

evaluate the credibility of a claimant to arrive at an independent

15

judgment based on the medical findings and other evidence.").

In this case, as stated above, the ALJ discussed Plaintiff's treatment notes reflecting mostly normal examinations, her positive reaction to medication, her course of treatment including counseling and pet therapy,[7] her daily activities, and her prior employment.  The ALJ thus adequately accounted for her evaluation of Plaintiff's subjective complaints and her "credibility determination is entitled to 'great deference' as it was not 'patently unreasonable.'"  Thompson v. Comm'r of Soc. Sec., No. 16-CV-6868, 2018 WL 1558270, at *1 (E.D.N.Y. Mar. 28, 2018) (quoting Pietrunti v. Dir., Office of Workers' Comp. Programs, 119 F.3d 1035, 1042 (2d Cir. 1997)).


[BOTTOM OF PAGE INTENTIONALLY LEFT BLANNK]


---

[7] Plaintiff argues that "[i]n modern medicine, psychiatric conditions are not ordinarily treated by means other than psychotropic medications and therapy, as was the case here" and "[t]he history of brain surgery as a treatment for mental illness is not one the psychiatric community is proud of."  (Pl. Br. at 16 & n.14.)  The Court agrees that brain surgery is not a prerequisite for a finding of disability, however, here, the ALJ evaluated Plaintiff's longitudinal treatment and medication plan in conjunction with her treating psychiatrist's notes documenting mostly normal functioning and positive response to the course of treatment.

16

<u>CONCLUSION</u>

For the foregoing reasons, the Commissioner's cross-motion (D.E. 11) is GRANTED and Plaintiff's motion (D.E. 9) is DENIED.  The Clerk of the Court is directed to enter judgment accordingly and mark this case CLOSED.


SO ORDERED


_/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated: August __27_, 2020
       Central Islip, New York

17